**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MAZZETTA COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-02488 |
| | ) | |
| v. | ) | Judge |
| | ) | |
| MATTHEW SIMPSON and MONARCH | ) | Magistrate Judge |
| TRADING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, Mazzetta Company, LLC ("Mazzetta"), by and through its attorneys, David J. Stein, Andrea Nieto, and Aaron Klein of Greenberg Traurig, LLP, and complains of Defendants Matthew Simpson ("Simpson") and Monarch Trading, LLC ("Monarch") (collectively "Defendants") as follows:

## PARTIES

1.     Mazzetta is an Illinois limited liability company engaged in the business of importing, distributing, and producing fine, frozen seafood for the foodservice, grocery and broadliner markets worldwide. Mazzetta is a single member limited liability company, and its member, Jorzac Corporation, is a citizen of Illinois. Mazzetta is therefore a citizen of Illinois. Mazzetta's principal place of business is in Highland Park, Lake County, Illinois.

2.     Simpson is an individual and citizen of New Hampshire, residing in Hudson, New Hampshire. Simpson is a former long-tenured sales employee of Mazzetta who most recently served in the role of Vice President of Business Development. Simpson's last day of employment with Mazzetta was February 14, 2024.

3.     As set forth in further detail below, Simpson was a highly compensated sales employee at Mazzetta who, prior to his resignation, accessed and misappropriated Mazzetta's

confidential and proprietary information, and following his resignation, immediately began working for Monarch, a direct competitor of Mazzetta, as President of Monarch's seafood division.

4.     Monarch is a California limited liability company engaged in the business of distributing meat, poultry, and seafood nationwide from vendors in the United States and overseas. Monarch has two members, MAH International Inc. and Mbest Enterprises, Inc. MAH International, Inc. is a California corporation with its principal place of business in Santa Monica, California. Mbest Enterprises, Inc. is a California corporation with its principal place of business in Santa Monica, California. Monarch is therefore a citizen of California.

## JURISDICTION AND VENUE

5.     This Court has original subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1331 because this matter arises under the laws of the United States, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA"). This Court has supplemental jurisdiction over Mazzetta's pendant state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are part of the same case or controversy as Mazzetta's federal claim.

6.     This Court also has diversity jurisdiction over this cause pursuant to 28 U.S.C. § 1332 because this matter is between citizens of different states, as Mazzetta is a citizen of Illinois, Simpson is a citizen of New Hampshire, and Monarch is a citizen of California, and the amount in controversy exceeds $75,000.00 inclusive of interest and costs.

7.     Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §§ 1391(b)-(c) because Defendants' actions giving rise to Mazzetta's claims occurred in the Northern District of Illinois, Eastern Division. Simpson also agreed to submit to the jurisdiction of this Court when he executed the Noncompetition, Nonsolicitation, and Confidentiality Agreement (*See* "Agreement" attached as **Exhibit A**), *agreeing* that any action or proceeding

2

arising under or related to the Agreement may be brought in the federal courts presiding over Lake County, Illinois. *See* Agreement ¶16.

8.      This Court has personal jurisdiction over Simpson because he executed the Agreement with Mazzetta consenting to personal jurisdiction in the federal courts presiding over Lake County, Illinois. *See Id.*

9.      This Court has personal jurisdiction over Monarch under the Illinois long-arm statute, 735 ILCS 5/2-209, because Monarch committed tortious acts within Illinois by intentionally interfering with Simpson's Illinois Agreement with Mazzetta, by misappropriating Mazzetta's trade secrets and other confidential information and therefore damaging Mazzetta in Illinois where Mazzetta maintains its principal place of business. This Court also has personal jurisdiction over Monarch because Monarch is a national wholesaler of meat, poultry, and seafood that purposefully avails itself of the benefits and protections of Illinois law by, upon information and belief, engaging in significant amounts of sales into the state of Illinois sufficient to subject it to the general jurisdiction of this Court.

## FACTUAL ALLEGATIONS

10.      Mazzetta is a family-owned seafood company in the business of importing, distributing, and producing fine, frozen seafood for the foodservice, grocery and broadliner markets worldwide. Mazzetta provides over 900 seafood products.

11.      As part of its business, Mazzetta cultivates relationships with fishermen, seafood retailers, private label providers, restaurants, hotels, resorts, and more.

12.      Mazzetta's clients, customers, suppliers, and vendors are its most valuable assets. Mazzetta works with hundreds of fishermen, farmers, retailers, restaurant owners, and other

industrial and retail foodservice suppliers and providers across the world with which it has cultivated relationships with for over thirty years.

13.     On or about November 10, 2015, Mazzetta hired Simpson as an Operational Director. As Operational Director he built fish processing floor efficiencies and managed recovery/utilization programs for the corporate sales team.

14.     In March 2019, Mazzetta promoted Simpson into a sales leadership role where he built a book of business in the food service, internet commerce, retail and multi-unit restaurant categories.

15.     Simpson's compensation in sales included opportunities to earn bonuses based on Mazzetta's performance.

16.     Simpson executed the Agreement effective June 1, 2022 specifically in exchange for the additional consideration of a promotion to the Vice President of Business Development and an increase to his annual base salary by One Hundred Thousand Dollars ($100,000.00), bringing his total base salary to Three Hundred Thirty Thousand Dollars ($330,000.00). Mazzetta also provided Simpson with an increase of paid vacation to fifteen days.

17.     The Agreement provides, among other things, the following restrictive covenants:

**Covenant Not to Compete.** Employee agrees that, so long as Employee is employed by Company and for a period of twelve (12) months following separation from Company for any reason, Employee is strictly prohibited from directly or indirectly engaging in any Restricted Activity for or on behalf of any Competing Organization in the Restricted Area.

"Restricted Activity" means (i) Provision of Services: services as an officer, director, partner, principal manger, employee, independent contractor, agent, representative, or consultant requiring the performance of the same or substantially similar duties as Employee performed for Company in the two (2) years preceding Employee's separation from Company; or (ii) Fiscal Interest: having any ownership interest in, except that passive ownership of no more than five percent (5%) of the outstanding voting or profits interest of any publicly held entity or business shall not in and of itself constitute a violation of this provision.

4

"Restricted [Area]" means any State, territory, or province in which Company (i) did business in during the two (2) years preceding Employee's separation from Company and that Company continued to do business in at the time of Employee's separation, or (ii) had plans to do business at the time of Employee's separation of which Employee was aware.

**Covenant Not to Solicit.** Employee agrees that, so long as Employee is employed by Company and for a period of twelve (12) months following separation from Company for any reason, Employee shall not, on behalf of himself, a third-party, or any Competing Organization, either as a proprietor, partner, shareholder, officer, director, employee, independent contractor, manager, agent or consultant, or in any other capacity, directly or indirectly.

(a) hire, recruit, attempt to hire or recruit, or induce or attempt to induce to leave the employ of services of Company or any Affiliate of the Company, any person who is or was an employee, consultant, contractor, or service provider of Company or any Affiliate of the Company, with whom Employee had personal contact and/or about whom Employee accessed Confidential Information on behalf of Company in the eighteen (18) months preceding Employee's separation date;

(b) solicit, service, or in any way interfere with the relationship between Company or any Affiliate of the Company and any person or entity who is a customer or supplier of the Company or any Affiliate of the Company, with or for whom Employee has worked with, presented to, or accessed Confidential Information about on behalf of Company in the two (2) years preceding Employee's separation date, including but not limited to any efforts to induce or attempt to induce such person or entity to cease doing business with or reduce its amount of business conducted with Company or any Affiliate of the Company;

(c) solicit, service, or in any way interfere with the relationship or prospective relationship between Company or any Affiliate of the Company and any person or entity who was, during the two (2) years preceding Employee's separation date, a prospective customer or supplier with or for whom Employee worked with, presented to, or accessed Confidential Information about, including but not limited to any efforts to induce or attempt to induce such person or entity to cease doing business with, forego doing business with, or reduce its amount of business with the Company or any Affiliate of the Company.

**Confidential Information.** Employee agrees that Employee will not, at any time, whether during the period of Employee's employment with Company or thereafter, and for as long as is permissible under applicable law, disclose to any other person or entity or use for any purpose other than in connection with the performance of

ACTIVE 695587768v6

Employee's duties for Company any information as to the state of Company's affairs or relating to its customers or suppliers, or its business or financial condition not generally known to the public ("Confidential Information"), including, without limitation, any of the Company's processes or formulae; trade secrets; data; compilations of information; identity of, methods of doing business with, and requirements of Company's customers, vendors, and suppliers; contact persons; price and/or profitability information; price lists; pricing policies; methods of establishing price lists and pricing policies; methods of establishing sales invoices; processes, techniques, methods, and practices related to the Company's product development; product specifications; and processes, techniques, methods, and practices related to company's development, procurement, harvesting, farming, water quality monitoring and pond construction.

18. The key role of the Vice President of Business Development is to seek new business opportunities by contacting and developing relationships with clients, customers, and vendors and contacting and developing relationships with potential clients, customers, and vendors. The Vice President of Business Development does this by identifying customer needs, customizing pricing solutions, and building long-term trusting relationships with clients, vendors, and strategic business partners.

19. The Vice President of Business Development is the face of Mazzetta and acts as the liaison between customers, salespersons, suppliers, producers, and vendors.

20. The Vice President of Business Development also is familiar with Mazzetta's products, services, and trends, along with the pricing and payment terms with customers, profit margins, price markups, vendors, and strategic business partners.

21. Mazzetta's confidential business information includes Mazzetta's personnel information, suppliers, producers, vendors, sourcing, storage, transport protocols, pricing data, sales data, financial information, including pricing and payment terms, profit margins, and price markups, records, business plans, confidential reports, customer lists, contracts, harvesting methods, farming methods, water quality monitoring, pond construction, and processing.

22. Mazzetta undertakes considerable expense to collect and analyze information and to implement practices and business methods to solicit and build relationships with clients, vendors, and strategic business partners and to develop harvesting, farming, storage, and processing methods.

23. Mazzetta also holds exclusive relationships with some of its customers.

24. The information set forth above in Paragraphs 20, 21, and 22 is of an independent economic value to Mazzetta, as it is utilized by Mazzetta to, among other things, set purchase and sales costs and allows Mazzetta to remain profitable. In the absence of the confidentiality of this information, Mazzetta's business model and profitability would be significantly called into question.

25. Mazzetta takes all reasonable steps to limit access to its confidential and proprietary business information listed in Paragraphs 20, 21, and 22, such as developing policies and procedures and confidentiality agreements, requiring passwords to access Mazzetta systems, and restricting access to sensitive information to those who require access to perform their job functions.

26. Specifically, Mazzetta maintains all of its systems in a secure capacity with login credentials required for employees to access Mazzetta systems. Furthermore, employees must also have a unique second password to access Mazzetta's Customer Relationship Management ("CRM") and Enterprise Resource Planning ("ERP") software systems.

27. Passwords for the CRM and ERP systems are only issued on a need-to-know basis.

28. Further, Mazzetta issued its 2022 Noncompetition, Nonsolicitation, and Confidentiality Agreements to key employees in an effort to target the confidentiality obligations

contained therein specifically at employees with access to highly sensitive, confidential and proprietary information of the company.

29.     The Agreement signed by Simpson in 2022 was only signed by three key employees of Mazzetta, which Mazzetta specifically targeted due to their access to Mazzetta's most sensitive information.

30.     On or about February 2, 2024, Simpson resigned, effective February 14, 2024.

31.     On his last day of employment with Mazzetta on February 14, 2024, Mazzetta presented him with a reminder of his post-employment obligations and a declaration of compliance with the same. (*See* "Reminder" and "Declaration" attached as **Exhibit B**). Simpson refused to execute the declaration and refused to disclose his new employer to Mazzetta.

32.     Mazzetta immediately began due diligence into Simpson's new employment, which was ultimately confirmed as Monarch, both through Simpson's publicly available LinkedIn page as well as a news article published by Undercurrent News ("Article") on or around February 15, 2024. (*See* "Simpson LinkedIn" attached as **Exhibit C**; "Article" attached as **Exhibit D**).

33.     Monarch's seafood division directly competes with Mazzetta.

34.     In the Article, Simpson admits that he will be engaging in activities directly competitive with Mazzetta in the course of his employment with Monarch, stating that "[t]here are a lot of things that I'm very passionate about in ***seafood*** and looking forward to pursuing" (emphasis added). He also admits in the Article that his role at Monarch targets ***growing seafood sales***, the same exact role which Simpson was employed at Mazzetta.

35.     Monarch announced Simpson's hiring on its publicly available LinkedIn page as follows:

8



36.     Shortly thereafter, Mazzetta was contacted by one of its customers who provided Mazzetta with an e-mail detailing Simpson's ongoing solicitation of Mazzetta's customers in breach of the Agreement.

37.     In violation of his obligations to Mazzetta, Simpson sent an e-mail on February 18, 2024 to the Mazzetta customer rolodex stating as follows:

> After 20+ years in global operations, procurement, supply chain, corporate quality, and almost 10 years at Mazzetta, I have accepted a new role as President of Monarch, LLC effective February 19, 2024.
>
> Monarch is a $500M meat, chicken & seafood company with headquarters located in Los Angeles, CA, with processing and vertical integration capabilities.
>
> I will remain based in New England and will remain focused on sales, operations, sustainability, FSMA, and vertical integration for our seafood business, with roles also on our meat protein side.

Over the years, I have been grateful for the relationship you have afforded me, and I am humbled for the opportunity to call many of you friends. Thank you for this.

I will be in Boston (SENA) March 7-12th, and also in Barcelona for the Global Seafood show. My cell phone remains the same [ ].

I would be grateful to have the opportunity to let you know what we do, and what our vision is over the next few years for our global supply chain.  Please feel free to respond, or call anytime.

38.     Simpson attended SENA on behalf of Monarch.

39.     On information and belief, Simpson communicated with Red Lobster, one of Mazzetta's largest clients, and solicited Red Lobster on behalf of Monarch, at SENA, in violation of his obligations to Mazzetta. On information and belief, Simpson solicited numerous other clients of Mazzetta at the SENA show and Mazzetta's investigation into Simpson's conduct in this regard is ongoing.

40.     After discovering the above-described wrongdoing, Mazzetta undertook further review of Simpson's electronic files and initiated a forensic investigation of Simpson's Mazzetta laptop and e-mail account.

41.     The additional due diligence discovered the following.

42.     Upon information and belief, as a part of the exploratory phase of Simpson's potential employment with Monarch, Simpson executed a mutual non-disclosure agreement with Monarch or about November 27, 2023, which states, in part, that "[e]ach party acknowledges that it has received or will receive information from the other party that is non-public, confidential and proprietary in nature which may include, but is not limited to trade secrets " (*See* "Mutual Non-Disclosure Agreement" attached as **Exhibit E**).

43.     Upon information and belief, Simpson executed an employment offer letter with Monarch on or about December 28, 2023.

10

44.     Upon information and belief, Simpson began misappropriating Mazzetta's confidential and proprietary information beginning in at least, January 2024 through February 2024, and potentially earlier than that.

45.     Simpson negotiated an employment contract with Monarch in January 2024. On information and belief, Simpson executed his employment contract with Monarch in mid-January, 2024. (*See* "Executive Employment Agreement" attached as **Exhibit F**).

46.     Simpson's employment as President of the Seafood division came with a handsome salary and benefits package, with a base salary of $530,000,0, a sign on bonus of $100,000, and a first year-end bonus of $50,000, making him an extremely highly compensated executive of Monarch.

47.     On March 11, 2024, Mazzetta received the forensic results of the analysis of Simpson's Mazzetta issued computer, a MacBook Pro, Serial No. WL57H22LR7.

48.     The forensic analysis revealed that Simpson accessed numerous Mazzetta files and confidential information from an external KINGSTON USB drive between January 3, 2024 and February 8, 2024. Those files included the following:

| Path | Date (EST/EDT) |
|------|----------------|
| Volumes/KINGSTON/Matt Simpson's - Customer Contact Info24.xlsx | 2/8/24 6:14 AM |
| Volumes/KINGSTON/█████ (Mazzetta) Pricing TEMPLATE 4-25-23FINAL.xlsx | 2/7/24 3:19 PM |
| Volumes/KINGSTON/customercontactreport.csv | 2/7/24 3:19 PM |
| Volumes/KINGSTON/SalesforceCRM-MAZZ.xls | 2/7/24 8:56 AM |
| Volumes/KINGSTON/Copy of █████-Costing-22.xlsx | 2/7/24 8:53 AM |
| Volumes/KINGSTON/█████-1-24-5-31-24ADDENDUM[14].doc | 1/11/24 1:21 PM |
| Volumes/KINGSTON/SIMPSON-2023-SUMMARY-SALES.xlsx | 1/11/24 8:35 AM |
| Volumes/KINGSTON/23.xlsx | 1/8/24 4:45 PM |
| Volumes/KINGSTON/█████/2024 Seafood Standards Feedback.xlsx | 1/3/24 8:48 AM |
| Volumes/KINGSTON/█████/█████/Sts Update Table 2024_short version_draft v6 Supplier and Feed Manufacturer REVIEW[57].docx | 1/3/24 8:47 AM |
| Volumes/KINGSTON/█████ Feed Compliance Statement DRAFT 2024 v2 Supplier and Feed Manufacturer REVIEW.docx | 1/3/24 8:47 AM |
| Volumes/KINGSTON/█████/SIMPSON-MASTER-CUSTOMER-AND-PROSPECT.xlsx | 1/3/24 8:41 AM |
| Volumes/KINGSTON/PERSONAL/HMS-XC-TRAINING SCHEDULE-23.xlsx | 1/3/24 8:40 AM |
| Volumes/KINGSTON/C. CUSTOMERS/MAZZETTA CUSTOMERS BY SALESMAN 2019-2023 (1).xlsx | 1/3/24 8:20 AM |

49.    For example, the document titled SalesforceCRM-MAZZ contains contact information, including mobile phone numbers, e-mails, addresses, and other information for over 1700 of Mazzetta's customers.

50.    The document titled Salesforce CRM-MAZZ appears to be an export of the entirety of Mazzetta's legacy Salesforce CRM data.

51.    What is worse, the document titled SIMPSON-2023-SUMMARY-SALES includes Mazzetta's historical revenue data by revenue source, seafood category, customer, and weight, and also contains Mazzetta's detailed financial data by customer including costs, ***markups, and margins, Mazzetta's financial data per item including cost, markups, and margins, and Simpson's targeted business plan to increase Monarch's revenue growth over a 5-year period***.

52.    This document also contains Simpson's detailed business plan for his employment at Monarch, including but not limited to information targeted at seafood shows and conferences to attend and an organization to join for membership, the National Fisheries Institute ("NFI").

ACTIVE 695587768v6

53. Simpson had no legitimate reason to store Mazzetta's confidential financial data on a personal USB drive in a spreadsheet containing his 5-year sales growth plans for Monarch, other than to misappropriate Monarch's valuable confidential and trade secret information for his and Monarch's benefit.

54. Consistent with his targeted business plan and as listed in the document referenced above in Paragraph 51, and even before the last day of his employment at Mazzetta, Simpson attended the Global Seafood Market Conference ("GSMC") in Orlando, Florida and solicited customers on behalf of Monarch.

55. Mazzetta paid for Simpson's attendance, travel, and all other expenses related to the GSMC trade show.

56. Simpson's actions at the GSMC violated his duty of loyalty to Mazzetta, for whom he had not yet ended his employment.

57. Consistent with his targeted business plan, Shortly after Simpson joined Monarch, Monarch joined NFI, an industry trade association that Mazzetta has been a member of for approximately 25 years.

58. NFI announced Monarch's membership through LinkedIn with Simpson commenting on the same post.



59.     Without the intervention of the Court, Mazzetta will suffer irreparable harm by the further loss and unauthorized use of its trade secrets, confidential and proprietary information, know how, and other confidential company property.

60.     Mazzetta has no adequate remedy at law to prevent the dissemination of its confidential and proprietary trade secrets and thus requests injunctive relief as set forth below.

61.     After Mazzetta obtained the results of its forensic inspection, it promptly sent a cease and desist letter to Simpson and Monarch demanding that Simpson and Monarch cease violations of the Agreement, ongoing use and misappropriation of Mazzetta's proprietary and confidential information, and Monarch's interference with Mazzetta's Agreement with Simpson. (*See* "Cease and Desist Letter" attached as **Exhibit G**).

62.     The Cease and Desist Letter enclosed a copy of Simpson's Agreement with Mazzetta, undisputedly placing Monarch on actual notice of Simpson's obligations to Mazzetta.

ACTIVE 695587768v6

## COUNT I
### Defend Trade Secrets Act –All Defendants
### (Violation of 18 U.S.C. § 1836)

63.     Mazzetta repeats and re-alleges the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64.     Mazzetta's confidential and proprietary information includes trade secrets that derive independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

65.     Mazzetta has taken and continues to undertake reasonable efforts to maintain the confidential and proprietary nature of the information which comprise its trade secrets as set forth more fully above.

66.     Mazzetta expended substantial time, effort, money, and resources in developing and maintaining its confidential and proprietary information.

67.     While employed with Mazzetta, Simpson had access to Mazzetta's confidential and proprietary information including, but not limited to, Mazzetta's' customer lists, revenue data by revenue source, seafood category, customer, and weight, detailed financial data by customer including costs, markups, and margins, financial data per item including cost, markups, and margins, sales strategies, and techniques, and agreements.

68.     Monarch, through Simpson, acquired Mazzetta's confidential and proprietary information and knew or had reason to know that such information was obtained in violation of Simpson's duties and obligation to Mazzetta.

69.     Defendants' misappropriation of Mazzetta's trade secrets has caused and continues to cause Mazzetta damages and irreparable injury, as set forth here.

70. Defendants' misappropriation is willful and malicious and thereby entitles Mazzetta to an award of exemplary damages under the Defend Trade Secrets Act.

71. Defendants' misappropriation of Mazzetta's trade secrets and confidential information has caused and will continue to cause Mazzetta irreparable harm and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Defendants from further use or disclosure of Mazzetta's trade secrets is necessary to provide Mazzetta with complete relief.

WHEREFORE, Plaintiff Mazzetta Company, LLC requests that this Court enter judgment in its favor and against Defendants and grant Mazzetta the following relief:

(a) Temporary and permanent injunctive relief restraining and enjoining Defendants and those people and entities acting in concert with them from possessing, disseminating, transmitting, using, secreting, or otherwise accessing any confidential and proprietary information which is the property of Mazzetta to any third-party pursuant to 18 U.S.C. § 1836(b)(3)(A)(i);

(b) Temporary and permanent injunctive relief requiring Defendants and those people and entities acting in concert with them to affirmatively return any information in their possession, custody, or control deemed to be the confidential and proprietary property of Mazzetta, and to make available for forensic inspection, all personal storage methods, including, but not limited to, all laptops, notebooks, and desktop computers, tablets, external hard drives, magnetic storage media, optical storage media, zip drives, flash drives, USB drives, including but not limited to the KINGSTON USB drive which was plugged into Simpson's Mazzetta laptop on the dates and times set forth in paragraph 48, cloud storage, telephones, cellphones, and iPads, either in Defendants'

16

possession, or for cloud storage, storage Defendants have access to, and then to permanently delete or destroy any electronic and paper copies of any such information which is the property of Mazzetta, pursuant to 18 U.S.C. § 1836(b)(3)(A)(ii);

(c) Compensatory damages for the actual losses incurred because of Defendants' misappropriation of confidential and proprietary information in an amount in excess of $75,000;

(d) Damages based on the unjust enrichment to Defendants based on their actions;

(e) Exemplary damages under the DTSA;

(f) Mazzetta's attorneys' fees;

(g) Applicable interest and costs; and

(h) Any other relief that the Court finds equitable and just.

<u>**COUNT II**</u>
**Illinois Trade Secrets Act ("ITSA") –All Defendants**
**(Violation of 765 ILCS 1065/1 *et seq.*)**

72.     Mazzetta repeats and re-alleges the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

73.     Mazzetta's confidential and proprietary information includes trade secrets that derive independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

74.     Mazzetta has taken and continues to undertake reasonable efforts to maintain the confidential and proprietary nature of the information which comprise its trade secrets as set forth more fully above.

75.     Mazzetta expended substantial time, effort, money, and resources in developing and maintaining its confidential and proprietary information.

ACTIVE 695587768v6

76.     While employed with Mazzetta, Simpson had access to Mazzetta's confidential and proprietary information including, but not limited to, Mazzetta's' customer lists, revenue data by revenue source, seafood category, customer, and weight, detailed financial data by customer including costs, markups, and margins, financial data per item including cost, markups, and margins, sales strategies, and techniques, and agreements.

77.     Monarch, through Simpson, acquired Mazzetta's confidential and proprietary information and knew or had reason to know that such information was obtained in violation of Simpson's duties and obligation to Mazzetta.

78.     Defendants' misappropriation of Mazzetta's trade secrets has caused and continues to cause Mazzetta damages and irreparable injury, as set forth here.

79.     Defendants' misappropriation is willful and malicious and thereby entitles Mazzetta to an award of exemplary damages under the Illinois Trade Secrets Act

80.     Defendants' misappropriation of Mazzetta's trade secrets and confidential information has caused and will continue to cause Mazzetta irreparable harm and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Defendants from further use or disclosure of Mazzetta's trade secrets is necessary to provide Mazzetta with complete relief.

WHEREFORE, Plaintiff Mazzetta Company, LLC requests that this Court enter judgment in its favor and against Defendants and grant Mazzetta the following relief:

(a) Temporary and permanent injunctive relief restraining and enjoining Defendants and those people and entities acting in concert with them from possessing, disseminating, transmitting, using, secreting, or otherwise accessing any confidential and proprietary

ACTIVE 695587768v6

information which is the property of Mazzetta to any third-party pursuant to 765 ILCS 1065/3(a);

(b) Temporary and permanent injunctive relief requiring Defendants and those people and entities acting in concert with them to affirmatively return any information in their possession, custody, or control deemed to be the confidential and proprietary property of Mazzetta, and to make available for forensic inspection, all personal storage methods, including, but not limited to, all laptop, notebook, and desktop computers, tablets, external hard drives, magnetic storage media, optical storage media, zip drives, flash drives, USB drives, including but not limited to the KINGSTON USB drive which was plugged into Simpson's Mazzetta laptop on the dates and times set forth in paragraph 48, cloud storage, telephones, cellphones, and iPads, either in Defendants' possession, or for cloud storage, storage the Defendants have access to, and then to permanently delete or destroy any electronic and paper copies of any such information which is the property of Mazzetta, pursuant to 765 ILCS 1065/3(c);

(c) Compensatory damages for the actual losses incurred because of Defendants' misappropriation of confidential and proprietary information in an amount in excess of $75,000;

(d) Damages based on the unjust enrichment to Defendants based on their actions;

(e) Exemplary damages under the ITSA;

(f) Mazzetta's attorneys' fees;

(g) Applicable interest and costs; and

(h) Any other relief that the Court finds equitable and just.

<u>**COUNT III**</u>
**Breach of Contract – Defendant Simpson**

81.    Mazzetta repeats and re-alleges the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

82.    The Agreement is a valid and enforcement contract which Simpson entered voluntarily and in consideration for, among other things a salary increase of $100,000, a promotion, and an increase in paid vacation to fifteen days.

83.    Mazzetta has performed all conditions, covenants, and promises required on its part under the Agreement.

84.    The restrictive covenants contained in the Agreement are reasonable and necessary to protect Mazzetta's legitimate business interests including, but not limited to its customer relationships, its goodwill, know-how, and its confidential and proprietary information. And trade secret information.

85.    The restrictive covenants contained in the Agreement are reasonably and narrowly tailored protect Mazzetta's legitimate interests and do not unduly burden Simpson.

86.    The Agreement is not injurious to public welfare. Issuing an injunction would promote the public interest by preserving the status quo during this litigation and allowing Mazzetta to continue its valuable customer relationships, as well as safeguarding confidential information and preventing unethical conduct.

87.    Simpson has violated, and will continue to ignore, his obligations under the Agreement which prohibit Simpson from competing with Mazzetta, soliciting Mazzetta's customers, prospective customers, and employees, and using or disclosing Mazzetta's confidential information.

ACTIVE 695587768v6

88.     Simpson has knowingly, intentionally, and materially breached the terms of the Agreement by, among other things, copying, retaining or attempting to retain, misappropriating, and upon information and belief disclosing and using Mazzetta's confidential information and trade secrets to benefit himself and his new employer Monarch.

89.     Simpson has knowingly, intentionally, and materially breached the terms of the Agreement by, among other things, failing to adhere to the noncompete and non-solicit provisions contained in the Agreement when he began working for Monarch in a similar capacity in its seafood division and upon information and belief began soliciting Mazzetta's customers.

90.     Simpson's conduct was and is willful and malicious.

91.     Simpson's misappropriation of Mazzetta's trade secrets, confidential information, and his actions in directly competing with Mazzetta working for Monarch has caused and will continue to cause Mazzetta irreparable harm and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Defendants from further use or disclosure of Mazzetta's trade secrets is necessary to provide Mazzetta with complete relief.

WHEREFORE, Plaintiff Mazzetta Company, LLC requests that this Court enter judgment in its favor and against Defendants and grant Mazzetta the following relief:

(a) Temporary and permanent injunctive relief prohibiting Simpson and those people and entities acting in concert with him from engaging in competitive activities in violation of his contractual obligations to Mazzetta and applicable law.

(b) Temporary and permanent injunctive relief prohibiting Simpson and those people and entities acting in concert with him from soliciting Mazzetta's customers, suppliers, prospective customers, prospective suppliers, employees, consultants, contractors, or

service providers, or affiliates in violation of his contractual obligations and applicable law.

(c) Temporary and permanent injunctive relief restraining and enjoining Simpson and those people and entities acting in concert with him from possessing, disseminating, transmitting, using, secreting, or otherwise accessing any confidential and proprietary information which is the property of Mazzetta to any third-party under Paragraph 4 of the Agreement and applicable law.

(d) Temporary and permanent injunctive relief requiring Simpson and those people and entities acting in concert with him to affirmatively return any information in their possession, custody, or control deemed to be the confidential and proprietary property of Mazzetta, and to make available for forensic inspection, all personal storage methods, including, but not limited to, all laptop, notebook, and desktop computers, tablets, external hard drives, magnetic storage media, optical storage media, zip drives, flash drives, USB drives, including but not limited to the KINGSTON USB drive which was plugged into Simpson's Mazzetta laptop on the dates and times set forth in paragraph 48, cloud storage, telephones, cellphones, and iPads, either in Simpson's possession, or for cloud storage, storage Simpson has access to, and then to permanently delete or destroy any electronic and paper copies of any such information which is the property of Mazzetta, in violation of his contractual obligations to Mazzetta and applicable law.

(e) Compensatory damages for the actual losses incurred because of Simpson's misappropriation of confidential and proprietary information in an amount in excess of $75,000;

22

(f)  Punitive damages because of the willful and malicious nature of Simpson's conduct

(g)  Mazzetta's attorneys' fees under Paragraph 6 of the Agreement;

(h)  Applicable interest and costs; and

(i)  Any other relief that the Court finds equitable and just.

**COUNT IV**
**Breach of Fiduciary Duty – Duty of Loyalty**
**Defendant Simpson**

92.      Mazzetta repeats and re-alleges the allegations set forth in paragraphs 1-2, 4-23, 30-41, 43-52, and 54-62 as if fully set forth herein.

93.      At all relevant times before he resigned, Simpson was an employee and agent of Mazzetta.

94.      As an employee and agent of Mazzetta, Simpson owed fiduciary duties to Mazzetta, including the duty of loyalty. These duties include, but are not limited to, the duty to act only for the benefit of Mazzetta, and avoid actions to undermine Mazzetta's business relationships, such as using confidential information he learned about Mazzetta for his own benefit with a new employer or not fully devoting his time to Mazzetta while traveling on Mazzetta business.

95.      As an employee and agent of Mazzetta, Simpson, through his actions described above and incorporated into this Count IV, intentionally and willfully violated his duty of loyalty to Mazzetta by taking actions against Mazzetta's interest, including, but not limited to, soliciting Mazzetta's customers on behalf of Monarch, traveling to the GSMC show at Mazzetta's expense and using the show as an opportunity to solicit customers on behalf of Monarch, copying, retaining or attempting to retain, misappropriating, and upon information and belief disclosing and using Mazzetta's information, as well as other confidential company property, to  benefit Mazzetta's competitor, Monarch.

ACTIVE 695587768v6

96.     As a direct and proximate result of this breach, without justification or privilege, Mazzetta has been severely and irreparably damages and Simpson has unlawfully profited and benefited.

97.     Simpson's actions were willful and malicious and undertaken with reckless indifference to Mazzetta's rights.

98.     Simpson's breach of the duty of loyalty to Mazzetta through his solicitation, travel at Mazzetta's expense, and the disclosure of its confidential information and company property has caused and will continue to cause Mazzetta irreparable harm and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Simpson from further use or disclosure of Mazzetta's trade secrets is necessary to provide Mazzetta with complete relief.

WHEREFORE, Plaintiff Mazzetta Company, LLC requests that this Court enter judgment in its favor and against Simpson and grant Mazzetta the following relief:

(a) Temporary and permanent injunctive relief restraining and enjoining Simpson and those people and entities acting in concert with him from possessing, disseminating, transmitting, using, secreting, or otherwise accessing any confidential and proprietary information which is the property of Mazzetta to any third-party in violation of his obligations to Mazzetta and applicable law.

(b) Temporary and permanent injunctive relief requiring Simpson and those people and entities acting in concert with him to affirmatively return any information in their possession, custody, or control deemed to be the confidential and proprietary property of Mazzetta, and to make available for forensic inspection, all personal storage methods, including, but not limited to, all laptop, notebook, and desktop computers,

tablets, external hard drives, magnetic storage media, optical storage media, zip drives, flash drives, USB drives, including but not limited to the KINGSTON USB drive which was plugged into Simpson's Mazzetta laptop on the dates and times set forth in paragraph 48, cloud storage, telephones, cellphones, and iPads, either in Simpson's possession, or for cloud storage, storage Simpson has access to, and then to permanently delete or destroy any electronic and paper copies of any such information which is the property of Mazzetta, under applicable law.

(c) Compensatory damages for the actual losses incurred because of Simpson's breach of his duty of loyalty in an amount in excess of $75,000;

(d) Disgorgement of all wages and benefits Simpson received during the period of the breach, including but not limited to salary, expenses related to the GSMC show, and all other fringe benefits received during the period of the breach;

(e) Punitive damages because of the willful and malicious nature of Simpson's conduct;

(f) Applicable interest and costs; and

(g) Any other relief that the Court finds equitable and just.

## <u>COUNT V</u>
### Tortious Interference with Contract - Monarch

99.    Mazzetta repeats and re-alleges the allegations set forth in paragraphs 1-2, 4-23, 30-41, 43-52, and 54-62 as if fully set forth herein.

100.    Mazzetta and Simpson are parties to a valid and existing contract, the Agreement.

101.    Monarch knew or had reason to know of the existence of the valid and enforceable contract between Mazzetta and Simpson, as well as the obligations of confidentiality, non-competition, and non-solicitation contained there prohibiting Simpson from disclosing Mazzetta's

25

confidential and proprietary information and further prohibiting Simpson from soliciting Mazzetta's customers or working in competition with Mazzetta.

102.     Despite this knowledge, Monarch tortiously and unlawfully interfered and acted as a third-party intermeddler with the contracts between Mazzetta and Simpson by encouraging Simpson to misappropriate Mazzetta's confidential information and other company property in violation of Simpson's Agreement, to transfer confidential information and other company property to Monarch, and to divert Mazzetta's customers to Monarch, while Simpson was still employed by Mazzetta and after Simpson's termination from Mazzetta's employ.

103.     Moreover, Monarch tortiously and unlawfully interfered and acted as a third-party intermeddler with the contracts between Mazzetta and Simpson in employing Simpson to compete directly with Mazzetta's customers and to provide service directly to Mazzetta's customers in violation of the noncompete and non-solicit requirements of Simpson's contractual obligations.

104.     Monarch's interference caused and will continue to cause Mazzetta damages in an amount to be determined at the trial of this cause.

105.     Monarch's interference caused Mazzetta to retain counsel and commence this lawsuit to protect its rights under the Agreement.

106.     Monarch acted willfully, maliciously, and with intentional disregard of Mazzetta's rights, thereby entitling Mazzetta to punitive damages in an amount to be determined at trial.

107.     Such interference caused and will continue to cause Mazzetta irreparable and substantial injury and therefore cannot be fully redressed through damages alone.

WHEREFORE, Plaintiff Mazzetta Company, LLC requests that this Court enter judgment in its favor and against Monarch and grant Mazzetta the following relief:

(a) Temporary and permanent injunctive relief prohibiting Monarch from employing Simpson to perform services on behalf of its Seafood division or any related entity in the seafood market;

(b) Temporary and permanent injunctive relief prohibiting Monarch and those people and entities acting in concert with it from soliciting Mazzetta's customers, suppliers, prospective customers, prospective suppliers, employees, consultants, contractors, or service providers, or affiliates in the seafood market for which Simpson was familiar in his role as Vice President of Business Development for Mazzetta in violation of his obligations to Mazzetta and applicable law.

(c) Temporary and permanent injunctive relief restraining and enjoining Monarch and those people and entities acting in concert with it from possessing, disseminating, transmitting, using, secreting, or otherwise accessing any confidential and proprietary information which is the property of Mazzetta to any third-party in violation of his obligations to Mazzetta and applicable law.

(d) Temporary and permanent injunctive relief requiring Monarch and those people and entities acting in concert with it to affirmatively return any information in their possession, custody, or control deemed to be the confidential and proprietary property of Mazzetta, and to make available for forensic inspection, all personal storage methods, including, but not limited to, all laptop, notebook, and desktop computers, tablets, external hard drives, magnetic storage media, optical storage media, zip drives, flash drives, USB drives, including but not limited to the KINGSTON USB drive which was plugged into Simpson's Mazzetta laptop on the dates and times set forth in paragraph 48, cloud storage, telephones, cellphones, and iPads, either in Monarch's

27

possession, or for cloud storage, storage Monarch has access to, and then to permanently delete or destroy any electronic and paper copies of any such information which is the property of Mazzetta in violation of Simpson's obligations to Mazzetta and applicable law.

(e) Temporarily and permanent injunctive relief prohibiting Monarch from inducing or assisting Simpson in violating his Agreement with Mazzetta

(f) Compensatory damages for the actual losses incurred because of Monarch's tortious interference in an amount in excess of $75,000;

(g) Punitive damages because of the willful and malicious nature of Monarch's conduct

(h) Mazzetta's attorneys' fees under the wrongful acts doctrine;

(i) Applicable interest and costs; and

(j) Any other relief that the Court finds equitable and just.

## JURY DEMAND

Plaintiff Mazzetta Company, LLC hereby demands trial by Jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b)(1).

DATED: March 27, 2024.                           Respectfully submitted,

                                                 **MAZZETTA COMPANY, LLC**

                                                 By: */s/ David J. Stein*

                                                 David J. Stein (ARDC # 6307086)
                                                 Aaron Klein (ARDC # 6324173)
                                                 GREENBERG TRAURIG, LLP
                                                 77 W. Wacker Drive, Suite 3100
                                                 Chicago, Illinois 60601

ACTIVE 695587768v6

T: (312) 456-1003
F: (312) 456-8435
David.Stein@gtlaw.com
Aaron.Klein@gtlaw.com

Andrea E. Nieto (Fla. Bar No. 98039)
GREENBERG TRAURIG, P.A.
101 E Kennedy Blvd. Suite 1900
Tampa, Florida 33602
Telephone: (813) 318-5709
Fax: (813) 318-5900
Andrea.Nieto@gtlaw.com
(*Admission to ND Illinois Pending*)
**Attorneys for Plaintiff**

ACTIVE 695587768v6