**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MAZZETTA COMPANY, LLC,** ) | |
| ) | |
| ) | **No. 24-cv-2488** |
| **Plaintiff,** ) | |
| **v.** ) | **Judge Jeffrey I. Cummings** |
| ) | |
| **MATTHEW SIMPSON and MONARCH** ) | |
| **TRADING, LLC** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Mazzetta Company, LLC brings this case against its former employee, defendant Matthew Simpson, and his new employer, co-defendant Monarch Trading, LLC. In its Second Amended Complaint (the "Complaint"), Mazzetta alleges that defendants violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1832 *et seq.* (Count I), and the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.* (Count II), and it further asserts claims for breach of contract (Count III), breach of fiduciary duty (Count IV), and tortious interference with contract (Count IV). Mazzetta seeks to enforce the non-compete and confidentiality provisions of an agreement it entered into with Simpson. Mazzetta asserts that it was injured when Simpson breached the agreement and Monarch tortiously interfered with it.

Defendants move to dismiss Counts III, IV, and V under Federal Rule 12(b)(6), and they seek leave to file a fee petition under the Illinois Freedom to Work Act, 820 ILCS 90/1 *et seq.*, ("IFWA"). For the reasons below, the Court denies defendants' motion to dismiss Counts III, IV, and V of the Complaint, but grants defendants' request for leave to file a fee petition under the IFWA, (Dckt. #53).

## I. BACKGROUND

The facts below are drawn from the allegations in the Complaint. (Dckt. #61).

Plaintiff Mazzetta is a seafood company engaged in the business of importing and distributing frozen seafood for the foodservice, grocery, and broadliner markets. (*Id.* ¶10). Mazzetta initially hired defendant Simpson in November 2015 as an operational director, but promoted him in March 2019 to a sales leadership role. (*Id.* ¶¶13–14). In the sales role, Mazzetta granted Simpson access to Mazzetta's confidential information, including but not limited to client sales data and contact information, as well as Mazzetta's costs, margins, inventories, sales, and other business critical information. (*Id.* ¶14).

On or around June 1, 2022, Mazzetta promoted Simpson again, this time to Vice President of Business Development. (*Id.* ¶16). As Vice President of Business Development, Simpson's key role was to seek new business opportunities by contacting and developing relationships with clients, customers, and vendors, as well as potential clients, customers, and vendors. (*Id.* ¶20). Simpson also served as the liaison between customers, salespersons, suppliers, producers, and vendors. (*Id.* ¶21).

In connection with his promotion, Simpson executed an agreement with Mazzetta, effective June 1, 2022 (the "Agreement"), which provides in pertinent part:

> **<u>Covenant Not to Compete</u>**. Employee agrees that, so long as Employee is employed by Company and for a period of twelve (12) months following separation from Company for any reason, Employee is strictly prohibited from directly or indirectly engaging in any Restricted Activity for or on behalf of any Competing Organization in the Restricted Area.

(*Id.* ¶17; Dckt. #61-1 at 3). "Restricted Activity" is defined in the Agreement in relevant part as:

> . . . services as an . . . employee, . . . requiring the performance of the same or substantially similar duties as Employee performed for Company in the two (2) years preceding Employee's separation from Company . . .

2

(Dckt. #61 ¶17; Dckt. #61-1 at 7).  "Competing Organization" is defined in the Agreement as:

> any business . . . primarily engaged in the sourcing harvesting, processing, procurement, sale, and/or distribution of frozen seafood and/or products that contain frozen seafood.

(Dckt. #61-1 at 6).  "Restricted [Area]" is defined in the Agreement as:

> any State, territory, or province in which Company (i) did business in during the two (2) years preceding Employee's separation from Company and that Company continued to do business in at the time of Employee's separation, or (ii) had plans to do business at the time of Employee's separation of which Employee was aware.

(*Id.*).  In this case, the Restricted Area covers <u>twenty-one countries</u>, including the United States and Canada.  (Dckt. #61 ¶18(b)).

The Agreement also contains the following confidentiality provision:

> <u>Confidential Information</u>.  Employee agrees that Employee will not, at any time, whether during the period of Employee's employment with Company or thereafter, and for as long as is permissible under applicable law, disclose to any other person or entity or use for any purpose other than in connection with the performance of Employee's duties for Company any information as to the state of Company's affairs or relating to its customers or suppliers, or its business or financial condition not generally known to the public ("Confidential Information"), including, without limitation, any of the Company's processes or formulae; trade secrets; data; compilations of information; identity of, methods of doing business with, and requirements of Company's customers, vendors, and suppliers; contact persons; price and/or profitability information; price lists; pricing policies; methods of establishing price lists and pricing policies; methods of establishing sales invoices; processes, techniques, methods, and practices related to the Company's product development; product specifications; and processes, techniques, methods, and practices related to company's development, procurement, harvesting, farming, water quality monitoring and pond construction.

(Dckt. #61 ¶17; Dckt. #61-1 at 3–4).

Mazzetta alleges that the noncompete and confidentiality covenants contained in the Agreement are reasonable and necessary to protect Mazzetta's legitimate business interests, including its customer relationships, goodwill, know-how, and its confidential and proprietary information and trade secret information.  (Dckt. #61 ¶93).  Certain of Mazzetta's customers

relationships have continually existed for longer than ten years and predate Simpson's employment at Mazzetta. (*Id.* ¶18(b)). A non-exhaustive list of such customers includes Applebee's International, Sysco Food Service, The Kroger Company, and PF Chang's International. (*Id.*).

On or about February 2, 2024, Simpson voluntarily resigned from Mazzetta, effective February 14, 2024. (*Id.* ¶32). In the weeks prior to his resignation, Simpson accessed numerous Mazzetta files and confidential information, including contact information for over 1,700 of Mazzetta's customers, historical revenue data for seafood sales, and detailed financial data by customer. (*Id.* ¶¶50–53).

The day after Simpson resigned, Mazzetta learned that he joined defendant Monarch Trading, LLC as President of Monarch's Seafood Division. (*Id.* ¶¶34–35). In addition to seafood, Monarch also sells meat and poultry. (*Id.* ¶37). Mazzetta alleges that after joining Monarch, Simpson attempted to poach Mazzetta's customers in breach of the Agreement. (*Id.* ¶38). Mazzetta later learned that following his resignation, Simpson possessed documents containing Mazzetta's confidential and sensitive information such as costs, margins, inventory numbers, sales data, and customer contact information. (*Id.* ¶57). Mazzetta alleges Simpson's attempts to poach customers, travel at Mazzetta's expense while working to benefit Monarch, and the use and disclosure of Mazzetta's non-trade secret confidential information and company property has caused and will continue to cause Mazzetta harm. (*Id.* ¶108).

Mazzetta initiated this suit on March 27, 2024, (Dckt. #1), alleging that Simpson breached his fiduciary duty and the non-compete, non-solicit, and confidentiality provisions of the Agreement; that defendants violated the DTSA and ISTA; and that Monarch tortiously interfered with the Agreement. After defendants moved to dismiss the initial complaint, (Dckt.

4

#31), Mazzetta filed a first amended complaint, which withdrew its claim that Simpon breached the non-solicit provision of the Agreement, (Dckt. #44). The Complaint likewise does not allege a breach of the non-solicitation provision of the Agreement. (Dckt. #61).

## II. LEGAL STANDARD

A party may move to dismiss a complaint pursuant to Rule 12(b)(6) if it "fails to state a claim upon which relief can be granted," and such a motion tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). Plausibility is not satisfied by mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," or facts "merely consistent" with a defendant's liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007).

## III. DISCUSSION

Defendants argue that Mazzetta's breach of contract claim, (Count III), should be dismissed because the covenants in the Agreement are too broad, Mazzetta fails to allege a breach, and Mazzetta fails to allege a legitimate business interest. Defendants further argue that Mazzetta's breach of fiduciary duty claim, (Count IV), should be dismissed because it is preempted by ITSA. Finally, defendants argue that Mazzetta's claim for tortious interference with contract, (Count V), fails because the restrictive covenants are unenforceable. The Court addresses, and rejects, each of these arguments in turn.

5

### A. Mazzetta Properly Alleges a Breach of Contract Claim (Count III)

### 1. Whether the Restrictive Covenants in the Agreement are Enforceable is a Fact-Based Inquiry That Cannot be Decided at this Stage.

The parties agree that the terms of the Agreement's covenants must be reasonable to be valid and enforceable. "The Illinois Supreme Court has explained that a restrictive covenant is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee, (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public. Baked into this totality-of-the-circumstances review is the propriety of the limitations in terms of their length in time, their territorial scope, and the activities that they restrict." *LKQ Corp. v. Rutledge*, 96 F.4th 977, 982 (7th Cir. 2024) (cleaned up). Defendants argue that the restrictive covenants Simpson allegedly breached are overly broad and unenforceable.

The reasonableness of a restrictive covenant is determined "based on the totality of the facts and circumstances of the individual case." *Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F.Supp.3d 1103, 1110 (N.D.Ill. 2016) (citing *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 403 (Ill. 2011). Courts are permitted to determine whether restrictive covenants are facially invalid as a matter of law at the Rule 12(b)(6) stage only where the covenant is "patently unreasonable."[1] *See e.g.*, *Medix Staffing Sol., Inc. v. Dumrauf*, 2018 WL 1859039, at *2 (N.D.Ill. Apr. 17, 2018), *Timken Gears & Servs., Inc. v. Brad Foote Gear Works, Inc.*, 738 F.Supp.3d 1018, 1021 (N.D.Ill. 2024). However, when the covenant is not facially invalid, and would instead require the court to conduct a fact-specific analysis to determine reasonableness, a motion to dismiss must be denied so that the parties can have an opportunity to develop the

---

[1] Mazzetta's belief that whether a contract's covenants are reasonable is *always* a fact-based determination which is "not appropriate at the motion to dismiss stage," (Dckt. #60 at 3), is mistaken.

necessary evidentiary record. *Nortek Prods. (Taicang) Ltd. v. FNA Grp., Inc.*, No. 10 C 2813, 2011 WL 2110043, at *4 (N.D.Ill. May 24, 2011); *Allied Waste Servs.*, 177 F.Supp.3d at 1110.

Defendants contend that the restrictive covenants Simpson allegedly breached are unenforceable, and they rely on *Mazzetta Co., LLC*, 2019 IL App. (2d) 180678-U ("*Mazzetta I*") and *Medix Staffing Solutions, Inc. v. Dumrauf*, 2018 WL 1859039 (N.D.Ill. Apr. 17, 2018). However, *Mazzetta I* and *Medix* are distinguishable because they involved restrictive covenants that were patently unreasonable and materially different from the covenants at issue here.

In *Mazzetta I*, the court held a different iteration of Mazzetta's non-compete[2] was unenforceable as a matter of law because it barred a low-level sales employee "from engaging in *any* type of employment activity" in a seafood business for an eighteen-month period of time, with potentially limitless geographic restrictions. *Mazzetta Co., LLC*, 2019 IL App. (2d) 180678-U, ¶¶27–28. In effect, the employee's ability to work in his chosen field was severely limited because he "could not take *any* position—whether that be in marketing, research, IT, or any other non-sales capacity"—in the seafood industry. *Id.* (emphases added). In *Medix Staffing Solutions, Inc.*, the court held that a covenant that barred an employee from working for an eighteen month period for *any* company in the same field—whether it was a competitor or not—

---

[2] The restrictive covenant in *Mazzetta I* provided, in relevant part:

> Employee agrees that so long as he * * * is a [sic] employee of the Company, and for a period of eighteen (18) months following the effective date of termination of Employee's employment with the Company * * * he * * * will not, directly or indirectly, engage in (whether as an employee, consultant, proprietor, partner, director or otherwise), or have any ownership interest in, or participate in the financing, operation, management or control of any Competing Organization which does business anywhere within the Restricted Territory * * *.

2019 IL App (2d) 180678-U, ¶6.

and "extended beyond roles that were similar to those he held at Medix," was unenforceable and subject to dismissal at the pleadings stage.[3]  2018 WL 1859039, at \*3.

In contrast, the covenant at issue here is more limited in scope and duration.  In particular, the non-compete applies only to jobs that involve the same or substantially similar job duties, is limited to twenty-one specific jurisdictions where Mazzetta alleges that it did business in the two years prior to Simpson's departure or—to Simpson's knowledge—had plans to do business, and it lasts for only twelve months.  As such, the covenant here is not "patently unreasonable" within the meaning of *Medix* and *Mazzetta I*.  *See, e.g.*, *HCC Cas. Ins. Servs., Inc. v. Day*, No. 20 C 7620, 2021 WL 1165096, at \*6 (N.D.Ill. Mar. 26, 2021) (concluding geographic scope of 180 countries under a noncompete was not unreasonable on its face because "a broad geographical restriction does not automatically invalidate a postemployment restraint where the geographical prohibition is qualified by an activity restraint.") (cleaned up).

Furthermore, Mazzetta alleges that the noncompete and confidentiality covenants contained in the Agreement are reasonable and necessary to protect Mazzetta's legitimate business interests, including its customer relationships, goodwill, know-how, and its confidential and proprietary information and trade secret information.  (Dckt. #61 ¶93).  A determination of whether the restrictions in this case are reasonable would require the Court to assess whether

---

[3] The restrictive covenant in *Medix* stated, in relevant part:

> . . . Therefore, both during Employee's employment with Medix and for a period of eighteen (18) months following the termination of Employee's employment with Medix for any reason, Employee shall not, within a radius of 50 miles from any Medix office(s) where the Employee performed services as an employee of Medix, directly or indirectly, own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of, any business that either: (1) offers a product or services in actual competition with Medix; or (ii) which may be engaged directly or indirectly in the Business of Medix.

2018 WL 1859039, at \*1.

Mazzetta has a protectable interest as it alleges; the hardship (if any) imposed on Simpson; the hardship to the public; and the reasonableness of the time and geographic range required to protect Mazzetta's alleged protectable interest. This Court cannot undertake such a fact-specific analysis on a motion to dismiss and the parties must be given an opportunity to develop the necessary evidentiary record. *See e.g.*, *Nortek Prods. (Taicang) Ltd.*, 2011 WL 2110043, at *4 (refusing to dismiss a breach of contract claim where the determination of whether the restrictive covenants were reasonable would require a fact-specific analysis); *LKQ Corp. v. Rutledge*, No. 21 C 3022, 2022 WL 1720590, at *3 (N.D.Ill. May 27, 2022) (denying motion to dismiss where the "reasonableness of the [restrictive covenants] hinges on a variety of factual issues that the Court cannot meaningfully address on the limited record currently before it.").

### 2. Mazzetta Sufficiently Alleges a Breach of the Agreement.

Defendants further assert that this Court should dismiss Mazzetta's breach of contract claim because Mazzetta fails to sufficiently plead that Simpson breached the Agreement. Specifically, defendants argue that Monarch does not meet the definition of "Competing Organization," because it is not "primarily engaged in" the sale of frozen seafood since it also distributes meat and poultry. This argument fails.

First, defendants do not explain how merely selling products other than seafood requires the conclusion that Monarch is not "primarily engaged in" the sale of seafood. Second, as the Seventh Circuit continues to remind litigants, "Rule 8 requires only that a complaint must set forth plausible facts that, if true, would support a claim for relief." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) (cleaned up). Here, the Complaint alleges that "Monarch's seafood division directly competes with Mazzetta" and that Simpson "breached the terms of the Agreement . . . when he began working for Monarch in a similar capacity in its

seafood division." (Dckt. #61 ¶¶35, 98). Accepting these facts as true, as the Court must on a motion to dismiss, the Court finds that Mazzetta plausibly alleges that Simpson breached the non-compete provision by working for Monarch. *See e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 676 (7th Cir. 2013) ("At the pleading stage, [a plaintiff] must simply allege a plausible breach of contract theory.").

### 3. Mazzetta Sufficiently Alleges that the Covenants Protect a Legitimate Business Interest.

Defendants additionally argue that Mazzetta's breach of contract claim must be dismissed because Mazzetta cannot demonstrate a legitimate business interest. This argument also fails.

As explained above, for a non-compete clause to be valid and enforceable, its terms must be reasonable and necessary to protect an employer's legitimate business interests. *Reliable Fire Equip. Co.*, 965 N.E.2d at 396–97. Whether an employer has a legitimate business interest turns on "the totality of the facts and circumstances of the individual case." *Id.* at 403. Despite the need to examine the totality of the circumstances, there are certain factors that can help guide a court's analysis as to whether a legitimate business interest exists, including, "the near-permanence of [the employer's] customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." *Id.*

Defendants claim that Mazzetta fails to allege any near-permanent customer relationships that Simpson worked with in 2022. Defendants focus on the fact that Simpson's duties included seeking "new business" and suggest that unless Mazzetta specifically alleges that Simpson worked with its near-permanent customers, its breach of contract claim cannot withstand dismissal. This is incorrect.

Mazzetta identifies thirteen customers in the Complaint with which it alleges it had continuous relationships exceeding ten years. (Dckt. #61 ¶18(b)). Mazzetta further alleges that

Simpson, as Vice President of Business Development, was responsible for "contacting and developing relationships with clients, customers, and vendors, as well as *potential* clients, customers, and vendors." (*Id.* ¶¶20–21) (emphasis added). Mazzetta has therefore alleged that Simpson worked with both *existing* and *potential* clients in his role, and those allegations "contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Twombly*, 550 U.S. at 570. Thus, this argument is likewise insufficient to defeat Mazzetta's breach of contract claim at the motion to dismiss stage.

### B. Mazzetta's Breach of Fiduciary Duty Claim is Not Preempted by the ITSA

Next, defendants argue that Mazzetta's claim for breach of fiduciary duty (Count IV) should be dismissed because it is preempted by the Illinois Trade Secrets Act. The Illinois Trade Secrets Act explicitly states that it "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. 1065/8. Thus, for preemption to exist, the common law claim must be based on the misappropriation of allegedly confidential information or trade secrets. *Hecny Trans., Inc. v. Chu*, 430 F.3d 402, 404–05 (7th Cir. 2005) (accepting the "dominant view" that "claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets"). Defendants argue that Mazzetta's breach of duty claim is predicated on its trade secrets allegations and therefore is preempted. Mazzetta disagrees and asserts that its breach of duty claim is based on misconduct other than trade secret misappropriation such that preemption under the ITSA does not apply. The Court agrees with Mazzetta.

In *SKF USA Inc.*, the court held that a plaintiff's breach of fiduciary duty claim was not preempted by ITSA because the plaintiff's amended complaint did not claim that all the

transferred data constituted trade secrets. *SKF USA, Inc. v. Bjerkness*, 636 F.Supp.2d 696, 711, 718–19 (N.D.Ill. 2009). The court explained, "whereas the ITSA claim is meant to protect information 'sufficiently secret to derive economic value' and that 'is the subject of efforts to maintain its secrecy,' the breach of fiduciary duty claim more generally addresses the harm caused by the transfer of information not rising to the level of trade secrets that nevertheless caused injury to SKF." *Id.* at 718 (cleaned up). The *SKF* court was satisfied that "even if some of what the defendants filched constituted a trade secret," the plaintiff's alleged breach of fiduciary duty claim was aimed at a different harm than its trade secrets claim. *Id.*

Like the plaintiff in *SKF*, Mazzetta does not claim that defendants breached their duty to it based solely on information that constitutes trade secrets. Mazzetta alleges that Simpson attempted to poach customers for Monarch's benefit while still working for Mazzetta and used Mazzetta's non-trade secret information in furtherance of doing so. Taking the well-pleaded allegations as true, the Court is satisfied that Mazzetta's breach of fiduciary duty claim more generally addresses the transfer of information not rising to the level of trade secrets that nevertheless caused injury to Mazzetta. Therefore, the court finds that Count IV is not preempted by ITSA. *See SKF*, 636 F.Supp.2d at 718–19; *Aspen Mktg. Servs., Inc. v. Russell*, No. 09 C 2864, 2009 WL 4674061, at *6 (N.D.Ill. Dec. 3, 2009) (concluding breach of duty claim was not preempted by ITSA where plaintiff "alleges that defendants breached their duty based on the confidentiality agreement between Russell and plaintiff, which includes trade secrets and other defined 'Confidential Information.'").

As an alternative to their preemption argument, defendants assert that Mazzetta has not sufficiently alleged an injury. To the contrary, Mazzetta alleges Simpson's breach of the duty of loyalty to Mazzetta through his attempts to poach customers, travel at Mazzetta's expense while

working to benefit Monarch, and the use and disclosure of its non-trade secret confidential information and company property has caused and will continue to cause Mazzetta irreparable harm. (Dckt. #61 ¶108). These allegations "contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 570. Accordingly, Mazzetta has sufficiently alleged an injury.

### C. Mazzetta Sufficiently Alleges a Tortious Interference with Contract Claim.

Defendants' sole argument to support dismissal of Mazzetta's tortious interference claim is based on their contention that the breach of contract claim against Simpson should be dismissed. For the reasons stated above, the Court finds that Mazzetta sufficiently alleged a breach of contract claim against Simpson for his breach of the noncompete and confidentiality provisions of the Agreement. Accordingly, the Court finds that Mazzetta states a claim against Monarch for tortious interference.

### D. Defendants are Granted Leave to Submit a Fee Petition under the IFWA.

The IFWA provides, in relevant part, that:

> if an employee prevails on a claim to enforce a covenant not to compete or a covenant not to solicit, the employee shall recover from the employer all costs and all reasonable attorney's fees regarding such claim to enforce a covenant not to compete or a covenant not to solicit, and the court or arbitrator may award appropriate relief.

820 ILCS 90/25.

Defendants seek leave to file a fee petition under the IFWA based on their argument that they prevailed on Mazzetta's non-solicitation claim when Mazzetta dropped this claim from its lawsuit after defendants moved to dismiss it. Mazzetta, on the other hand, contends that the IFWA does not allow for an award of attorney's fees in this case because defendants are not "prevailing parties" on the non-solicitation claim within the meaning of federal and state

13

attorney's fee statutes.  According to Mazzetta, defendants did not "prevail" within the meaning of the IFWA because they have not "been awarded some relief by the courts."  (Dckt. #60 at 14 (collecting cases)).  The parties do not cite, and the Court's own research has not identified, any case interpreting the attorney's fee section of the IFWA.

The Court begins with the text of the statute.  Matters of statutory interpretation are questions of law, *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 458 (7th Cir. 2006), and the Court must apply Illinois' statutory interpretation rules because the IFWA is an Illinois law.  *See, e.g., Pastors Protecting Youth v. Madigan*, 237 F.Supp.3d 746, 749 (N.D.Ill. 2017) ("As a federal court interpreting Illinois law, the Court defers to Illinois' rules of statutory interpretation.").  "When construing a statute, an Illinois court's primary objective is to ascertain and give effect to the legislature's intent."  *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019) (cleaned up).  "The plain language of a statute is the best indication of the legislature's intent," *Maksym v. Bd. of Election Comm'rs of City of Chi.*, 950 N.E.2d 1051, 1060 (Ill. 2011), and the text of the IFWA must be given its plain meaning because it is clear and unambiguous.  *Snyder v. Heidelberger*, 953 N.E.2d 415, 421 (Ill. 2011).

An application of the above principles leads to the conclusion that defendants are entitled to an award of attorney's fees.  Defendants prevailed on Mazzetta's non-solicitation claim because Mazzetta dropped the claim from its lawsuit after defendants moved to dismiss on the ground that the non-solicitation covenant was "overly broad and unenforceable."  (Dckt. #31 at 3).  Thus, defendants have "prevailed" with respect to Mazzetta' non-solicitation claim under the plain meaning of the word "prevail," even though the Court did not enter a judgment in their favor with respect to the claim.

Furthermore, the Court rejects Mazzetta' argument that defendants must show that they are "prevailing parties" within the meaning of the federal and state fee shifting statutes to "prevail" on a claim under the IFWA. To begin, the phrase "prevail[] on a claim" is not synonymous with being a "prevailing party" under the fee shifting statutes. Federal and Illinois state courts routinely hold that a party may win a claim (and thus "prevail") without being deemed the "prevailing party" in a lawsuit. *See, e.g.*, *Powers v. Rockford Stop–N–Go, Inc.*, 761 N.E.2d 237, 240 (Ill.App. 2001) ("when the dispute involves multiple *claims* and both parties have won and lost on different *claims*, it may be inappropriate to find that either party is the prevailing party and an award of attorney fees to either is inappropriate") (emphasis added); *Tax Track Sys. Corp. v. New Inv. World, Inc.*, 478 F.3d 783, 789 (7th Cir. 2007) ("A party may win some [claims] and lose some, but it may win more than it loses. A 'prevailing party' need not win on all claims") (citing *Powers*, 761 N.E.2d at 240); *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999) (finding a plaintiff who received $225,000 award from a jury on two of four claims was the prevailing party, even though the defendant won on the plaintiff's two other claims); *Richardson v. Penfold*, 900 F.2d 116, 118 (7th Cir. 1990) (to be a prevailing party, the party must prevail on the merits of "at least some of his claims.") (cleaned up).

If the Illinois legislature intended to convey the meaning Mazzetta suggests, it would have used the term "prevailing party" in the IFWA, as it has in other state statutes. *See e.g.*, 750 ILCS 5/508(b) (Illinois Marriage and Dissolution of Marriage Act, providing "[i]n every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party."); 765 ILCS 77/55 (Residential Real Property Disclosure

Act providing "the court may award reasonable attorney's fees incurred by the prevailing party.").

For these reasons, the Court will apply the IFWA, as written, and finds that defendants are entitled to recover their costs and reasonable attorney's fees regarding Mazzetta's non-solicitation claim because they have "prevailed" on that claim. The parties are thus directed to meet and confer regarding the estimated amount of fees and costs incurred by defendants in connection with their motion to dismiss that portion of Mazzetta's breach of contract claim related to the non-solicitation provision of the Agreement. The parties are strongly encouraged to resolve among themselves the issue of the total amount of attorney's fees and costs due. If the parties are unable to do so, they shall follow the procedures prescribed in Local Rule 54.3 and file a joint status report regarding this matter on or before April 7, 2025.

## CONCLUSION

For the reasons set forth above, Defendants Matthew Simpson and Monarch Trading, LLC's Rule 12(b) Motion to Dismiss Counts III, IV, and V of Plaintiff's First Amended Complaint and Leave to Submit a Fee Petition, (Dckt. #53), is granted in part and denied in part.

**DATE: March 11, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**

16